UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| RICHELLE FOWLER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | CIVIL ACTION NO. |
| VS. ) | |
| ) | 3:14-CV-2596-G |
| GENERAL INSURANCE COMPANY OF ) | |
| AMERICA, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

Before the court is the defendant's motion to dismiss and, in the alternative, to sever and abate the plaintiff's claims for alleged violations of the Texas Insurance Code (docket entry 14). For the reasons stated below, the motion is granted in part and denied in part.

I. BACKGROUND

A. Factual Background

This case concerns an insurance contract between the plaintiff, Richelle Fowler, and the defendant, General Insurance Company of America. The defendant provided uninsured/underinsured motorists ("UIM") coverage to the plaintiff. First Amended Original Complaint ("Complaint") ¶ 3.0 (docket entry 10). As a result of an

automobile accident with a third-party on July 18, 2013, the plaintiff suffered various injuries. *Id*. She recovered compensation up to the policy limit on the third party's policy and the defendant assented to this settlement. *Id.* at ¶¶ 3.1, 4.3. Because this recovery left a portion of her medical expenses uncovered, the plaintiff turned to her UIM policy. *Id.* at ¶ 3.1 However, the defendant never offered any amount of compensation. *Id.*

B. Procedural Background

The plaintiff brought this suit in the County Court at Law Number 1 of Dallas County, Texas, and the defendant removed it to this court on diversity jurisdiction grounds. Notice of Removal at 1-2 (docket entry 1). The complaint alleges multiple violations of §§ 541.060 and 541.061 of the Texas Insurance Code.[1] *See* Complaint ¶¶ 4.5-5.0; *see also* TEX. INS. CODE §§ 541.060-061. The defendant then filed the instant motion to dismiss and, in the alternative, to sever and abate. The court now turns to the disposition of this motion.

II. ANALYSIS

A. Law

This motion requires application of the Federal Rule of Civil Procedure 12(b)(6) standard to claims under §§ 541.060 and 541.061 of the Texas Insurance Code -- the statutory provisions concerning unfair settlement practices and

---

[1] The Texas Insurance Code provides a private right of action for violations of §§ 541.060 and 541.061. *See* TEX. INS. CODE § 541.151.

misrepresentations of insurance policies respectively. After discussing the motion to dismiss standard, the court contrasts § 541.060 with § 1952.101 (the provision describing default rights and responsibilities under UIM policies). Juxtaposing these two provisions clarifies the unique extra-contractual rights created by § 541.060.

1. *Rule 12(b)(6) Standard*

"To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'" *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 570 (2007)), *cert. denied*, 552 U.S. 1182 (2008). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations, quotation marks, and brackets omitted). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *In re Katrina Canal*, 495 F.3d at 205 (quoting *Twombly*, 550 U.S. at 555) (internal quotation marks omitted). "The court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Id.* (quoting *Martin K. Eby Construction Company, Inc.*

*v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)) (internal quotation marks omitted).

The Supreme Court has prescribed a "two-pronged approach" to determine whether a complaint fails to state a claim under Rule 12(b)(6).  See *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).  The court must "begin by identifying the pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."  *Id.* at 679.  The court should then assume the veracity of any well-pleaded allegations and "determine whether they plausibly give rise to an entitlement of relief."  *Id.*  The plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*

### 2.  *Texas Insurance Code § 541.060*

In relevant part, the Texas Insurance Code provides:

> It is an unfair method of competition or an unfair or deceptive act or practice in the business of insurance to . . . fail[] to attempt in good faith to effectuate a prompt, fair, and equitable settlement of ... a claim with respect to which the insurer's liability has become *reasonably clear* . . . .

TEX. INS. CODE § 541.060(a)(2)(A) (emphasis added).  Whether an insurer acted in bad faith, because it denied or delayed payment of a claim after its liability became reasonably clear, is a question for the factfinder.  See *Nunn v. State Farm Mutual Automobile Insurance Company*, 729 F. Supp. 2d 801, 806 (N.D. Tex. 2010) (Fitzwater, Chief J.) (citing *Universe Life Insurance Company v. Giles*, 950 S.W.2d 48, 56 (Tex.

1997)). However, as a matter of law, a plaintiff cannot succeed on a § 541.060 claim if the factfinder determines the insurer never breached the policy's terms. See *PPI Technology Services, L.P. v. Liberty Mutual Insurance Company*, 515 F. App'x 310, 315 (5th Cir. 2013) (not designated for publication) (affirming dismissal of plaintiff's claim after the court had determined the insurer had not breached its contract with the insured).

3. *Texas Insurance Code § 1952.101*

"[U]ninsured or underinsured motorist coverage" is defined by the Texas Insurance code as "the provisions of an automobile liability insurance policy that . . . protect[] insureds who are *legally entitled to recover* from owners or operators of uninsured or underinsured motor vehicles . . . ." TEX. INS. CODE § 1952.101 (emphasis added). An understanding of the italicized text is essential to determining when an insured's contractual rights are triggered under a UIM policy.

Many cases have addressed when an insured becomes legally entitled to payment, including two recent opinions by the Supreme Court of Texas.[2] First, in *Henson v. Southern Farm Bureau Casualty Insurance Company*, the plaintiff sought recovery under two UIM policies obligating the defendant insurers to pay for damages

---

[2] Since the Supreme Court of Texas addressed this issue, the Texas Insurance Code was recodified without substantial change to the relevant language. See *Brainard v. Trinity Universal Insurance Company*, 216 S.W.3d 809, 818 (Tex. 2006) (discussing the predecessor to § 1952.101 which included the same "legally entitled" language).

"that a covered person is legally entitled to recover from an uninsured/underinsured motorist." *See* 17 S.W.3d 652, 654 (Tex. 2000). After an automobile accident with a third-party, the plaintiff sued the third-party driver, the driver of the car in which he was a passenger (the "driver"), and the two insurers which provided UIM policies covering the plaintiff. *Id.* at 652-53. With the insurers' permission, the plaintiff settled with the third-party. *Id.* at 653. The court then severed the claims against the insurers because they agreed to be bound by the judgment against the driver. *Id.* A jury ultimately determined that the third-party, rather than the driver, was completely responsible for the plaintiff's injuries. *Id.* The insurers then tendered an offer equal to the combined limits of both UIM policies. *Id.* However, the plaintiff refused this offer, believing that he was entitled to interest from the period preceding the court's judgment on liability. *Id.* The court concluded that the insurers owed no obligation to the plaintiff until a *court* had determined the liabilities of the parties involved in the accident. See *id.* at 654. Therefore, because the insurers tendered payment at the combined policy limits immediately after the judgment, no pre-judgment interest was due.[3] See *id*.

---

[3] In *Brainard v. Trinity Universal Insurance Company*, the court clarified its ruling in *Henson*. 216 S.W.3d 809, 814-15 (Tex. 2006). *Henson* concerned when an insurer is contractually obligated to provide compensation under a UIM policy. *Id.* The court concluded that interest on a *contractual* obligation under a UIM policy accrues only after a court renders a judgment on liability. *Henson*, 17 S.W.3d at 654. In *Brainard*, by contrast, the court considered whether an insurer is responsible for prejudgment interest on an unsatisfied *tort* claim which entitled the insured to
(continued...)

In *Brainard v. Trinity Universal Insurance Company*, the court reiterated that "the UIM insurer is under no contractual duty to pay benefits until the insured obtains a judgment establishing the liability and underinsured status of the other motorist." 216 S.W.3d 809, 818 (Tex. 2006). "[N]either a settlement nor an admission of liability from the tortfeasor establishes UIM coverage, because a jury could find that the other motorist was not at fault or award damages that do not exceed the tortfeasor's liability insurance." *Id*. The court, however, did not address the meaning of "reasonably clear" as used in § 541.060. See *id*.

4. *Distinguishing Contractual and Extra-Contractual Claims*

In *Hamburger v. State Farm Mutual Automobile Insurance Company*, the Fifth Circuit explained a key distinction between extra-contractual claims under § 541.060 and contractual claims under § 1952.101.[4] *See* 361 F.3d 875, 880-81 (5th Cir.

---

³(...continued)
coverage under a UIM policy. 216 S.W.3d at 812-15 (This concern is only relevant when a damages award does not exceed the UIM policy limit. Therefore, it was not at issue in *Henson*. 17 S.W.3d at 654.). In this case, the court noted that (1) UIM insurance serves as a substitute for tort recovery against the uninsured/underinsured tortfeasor and (2) the plaintiff would be entitled to prejudgment interest on any damages assessed directly against the tortfeasor. *Id.*; *see also* 21-342 DORSANEO, TEXAS LITIGATION GUIDE § 342.01[1]. Reasoning from these premises, the court concluded that the plaintiffs were entitled to prejudgment interest from the UIM insurer on an underlying tort damages award. 216 S.W.3d at 815. The court's analysis, however, did not alter its conclusion in *Henson* that an insurer has no contractual obligation to a plaintiff until a court's judgment on liability. 17 S.W.3d at 654.

⁴     This case actually analyzed article 21.21 of the Texas Insurance Code,
(continued...)

2004).  Whereas a plaintiff cannot assert a contractual claim until her "legal entitlement is established" by a judicial ruling, a plaintiff can assert an extra-contractual claim prior to a judgment creating a legal entitlement.  *Id.*  In other words, an insurer's liability can be "reasonably clear" prior to a judgment.  See *id.*; see also, *e.g.*, *Owen v. Employers Mutual Casualty Company*, Civil Action No. 3:06-CV-1993-K, 2008 WL 833086, at *3-4 (N.D. Tex. Mar. 28, 2008) (Kinkeade, J.); *Schober v. State Farm Mutual Automobile Insurance Company*, No. 3:06-CV-1921-M, 2007 WL 2089435, at *5 (N.D. Tex. July 18, 2007) (Lynn, J.).

Both a textual and purposivist analysis of § 541.060 support the Fifth Circuit's conclusion.  Ascribing the same meaning to the phrases "reasonably clear" and "legally entitled to recover" would violate the "axiomatic [rule] that when [a legislature] uses different text in adjacent statutes it intends that the different terms carry a different meaning."  *White v. Lambert*, 370 F.3d 1002, 1011 (9th Cir. 2004) (internal quotation marks omitted) (citing *Legacy Emanuel Hospital and Health Center v. Shalala*, 97 F.3d 1261, 1265 (9th Cir 1996)), *cert. denied*, 543 U.S. 991 (2005).  Such an interpretation would also conflict with the rule against surplusage, which encourages courts to give meaning to every word and phrase, avoiding any construction that would make a provision superfluous.  See, *e.g.*, *Tesfamichael v.*

---

[4](...continued)
which was repealed and replaced in 2005, without change to the relevant language, by § 541.060.

*Gonzales*, 411 F.3d 169, 175 (5th Cir. 2005). Under present law, an insured plaintiff cannot bring an extra-contractual claim against an insurer *after* a judgment because post-judgment the insurer-insured relationship becomes that of judgment debtor-creditor. See *Hamburger*, 361 F.3d at 880 (citing *Mid-Century Insurance Company of Texas v. Boyte*, 80 S.W.3d 546, 549 (Tex. 2002)). Thus, adopting the defendant's understanding of "reasonably clear" would render § 541.060(a)(2)(A) entirely superfluous: the lack of a judgment would bar claims prejudgment and the transformation of the parties' legal relationship would bar claims postjudgment. See *id.* at 880-81.

While *Hamburger* focuses specifically on § 541.060 claims containing the phrase "reasonably clear" (*i.e.*, § 541.060(a)(2)(A) and (B)), the Fifth Circuit's reasoning supports allowing all claims under § 541.060 prior to a judgment. As above, this conclusion follows from the premise that "after there is a judgment against the insurer, . . . there are no longer duties of good faith and the relationship becomes one of judgment debtor and creditor." *Hamburger*, 361 F.3d at 880 (citing *Mid-Century Insurance Company*, 80 S.W.3d at 549). If a plaintiff cannot bring claims after a judgment, barring claims prejudgment would render all of § 541.060 meaningless, thus violating the rule against surplusage. Furthermore, allowing § 541.060 claims prejudgment aligns with Chapter 541's stated purpose of prohibiting unfair methods

of competition and unfair or deceptive practices in the business of insurance. *See* TEX. INS. CODE §§ 541.001, 008.

While a judgment on the third party's liability is not a condition precedent to stating a claim under § 541.060, an insured plaintiff's extra-contractual claim will only succeed if the court determines that the insurer breached the underlying contract. See *PPI Technology Services, L.P.*, 515 F. App'x at 315. Thus, courts must assess whether extra-contractual claims should be abated until liability is determined and, relatedly, whether separate trials should be held.

### 5. *Separate Trials and Abatement*

It is within the court's discretion to decide whether a claim should be abated. See *Federal Deposit Insurance Corporation v. Blanton*, 918 F.2d 524, 533 (5th Cir. 1990). Some courts abate extra-contractual UIM claims until they reach a judgment regarding liability because the success of such claims is largely contingent on this judgment. See, *e.g.*, *Owen*, 2008 WL 833086, at *3-4; *Schober*, 2007 WL 2089435, at *5. However, the court may deny abatement if it would unduly prolong the litigation. *Karam v. Nationwide General Insurance Company*, No. Civ. A. 3:99-CV-2047-G, 1999 WL 1240791, at *2 (N.D. Tex. Dec. 20, 1999) (Fish, J.).

Similarly, "[f]or convenience, to avoid prejudice, or to expedite and economize, the court *may* order a separate trial of one or more separate issues [or] claims . . . ." FED. R. CIV. P. 42 (emphasis added). Separate trials may be necessary when a

defendant insurer makes a settlement offer, which serves as a defense to extra-contractual claims but could prejudice a trial regarding liability.  See *Karam*, 1999 WL 1240791, at *2; *In re State Farm Mutual Automobile Insurance Company*, 395 S.W.3d 229, 234-239 (Tex. App.--El Paso 2012).

B.  Application of Law to Facts

The plaintiff states a claim for relief with respect to some, but not all, of the § 541.060 claims she pleads.  *See* Complaint ¶ 4.8.  The claims in paragraph 4.8 of the complaint, except for those numbered 1 and 2.b., state valid claims for relief.  The plaintiff alleges that her car was struck from the rear by a third-party, her medical costs greatly exceeded the third-party's liability coverage, she settled the claim up to the third-party's policy limit, and the defendant agreed to this settlement.  *Id.* ¶¶ 3.0, 3.1, 4.3.  After this settlement, the plaintiff contends, she "presented Defendant with all documents necessary to evaluate [her] claim . . . [but] [n]o offer was ever made by Defendant."  *Id.* ¶ 3.1.  These allegations support plausible claims that the defendant's liability was "reasonably clear" and it nevertheless failed to (1) "effectuate a prompt, fair, and equitable settlement of . . . a claim;" (2) "promptly provide the [plaintiff] a reasonable explanation of the basis in the policy . . . for the insurer's denial;" (3) accept "a settlement offer under applicable first-party coverage on the basis that other coverage may be available or that third parties are responsible for the damages suffered;" (4) consider a "claim without conducting reasonable

investigation;" and (5) examine "a claim solely because there is other insurance of a different type available to satisfy all or part of the loss" at issue.  TEX. INS. CODE § 541.060; *see also* Complaint ¶ 4.8.  As discussed above, the absence of a judgment regarding liability does not preclude the plaintiff's claims under § 541.060.

However, claims 1 and 2.b. in paragraph 4.8 fail to state a claim for relief.  The plaintiff provides no evidence that the defendant "misrepresent[ed] to [her] a material fact or policy provision relating to coverage at issue."  TEX. INS. CODE § 541.060(a)(1); *see also* Complaint ¶ 4.8.  The defendant's alleged failure to provide a settlement offer is not equivalent to a material misrepresentation.  See *id.* ¶ 3.1.  The plaintiff's allegations support claims arising from *inaction*, as opposed to claims requiring affirmative action on behalf of the defendant, such as claims under § 541.060(a)(1).  Similarly, the complaint contains no contentions supporting the claim that through its refusal to make an offer the defendant intended to "influence the [plaintiff] to settle another claim under another portion of the coverage."  TEX. INS. CODE § 541.060(a)(2)(B); *see also* Complaint ¶ 4.8.

The allegations in paragraph 4.9 also fail to state claims for relief.  This paragraph merely presents a "formulaic recitation of the elements" of the causes of action in § 541.061.  *Twombly*, 550 U.S. at 555 (citations, quotation marks, and brackets omitted).  To allege a claim under § 541.061, an insurer must affirmatively make a misleading statement to the insured or fail "to state material fact[s] necessary

to make other statements made not misleading ...." *See* TEX. INS. CODE § 541.061. In this case, "no offer was ever made" by the defendant to settle the dispute. Complaint ¶ 3.1. The complaint only specifies one communication between the parties: the defendant's written permission for the plaintiff to settle the claim against the third-party. *Id.* ¶ 4.3. This communication may appear misleading or untrue given the defendant's later refusal to settle the plaintiff's UIM claim. However, an understanding of UIM insurance policies counsels against this conclusion.

Most UIM policies require the insurer's approval before the insured concludes a third-party settlement. 21-342 DORSANEO, TEXAS LITIGATION GUIDE § 342.01[5]. Failure to secure this approval often eliminates an insured's ability to bring a claim under the UIM policy with respect to the relevant accident. *Id.* This approval process helps protect insurers' financial interests, as an insurer is potentially responsible for any amount of damages not covered by a third-party settlement. *Id.* A third-party settlement up to the third-party policy limit, as existed in this case, often satisfies the insurer's interest to the greatest extent possible. Thus, the insurer will likely approve the settlement.

Such an approval, however, should not prevent an insurer from later contesting the extent of a UIM policy holder's damages or the allocation of liability when attempting to settle a UIM policy claim. An insurer approves the third-party settlement after the third-party and the insured have undergone the process of

negotiating a tentative settlement.  The insurer's last minute veto power protects its rights of subrogation.  See *id.*  But the insurer's absence throughout the settlement negotiations makes it unjust to bind the insurer to any factual conclusions reached in the process.[5]  Therefore, the defendant's failure to provide the plaintiff a settlement offer for the UIM claim does not render its prior approval of a third-party settlement a misleading or untrue statement in violation of § 541.061.

With regard to the extra-contractual claims the court did not dismiss, there is presently no reason that trying these claims concurrently with the plaintiff's request for declaratory relief regarding liability would prejudice the defendant.  If the situation changes as the case proceeds, the defendant can make a motion for separate trials at the appropriate time.  Furthermore, the court will not speculate as to the likely outcome of a trial on liability and thus it cannot determine whether abatement would be more efficient than trying the claims concurrently.  For this reason, the court concludes that it is premature to abate any of the extra-contractual claims.

### III.  CONCLUSION

For the reasons stated above, the defendant's motion to dismiss is **GRANTED** with respect to claims 1 and 2.b. listed in paragraph 4.8 of the complaint and all of the claims listed in paragraph 4.9 of the complaint.  With respect to the remaining

---

[5]  If the plaintiff believes the third-party settlement process in this case differed from the description above in a material way that warrants an alternative conclusion, she is welcome to submit documentation demonstrating this difference.

claims, the motion to dismiss is **DENIED**.  The motion to sever and abate the remaining claims is also **DENIED** without prejudice to renewal upon an appropriate showing.

    **SO ORDERED**.

November 13, 2014.

                                              _____
                                              **A. JOE FISH**
                                              **Senior United States District Judge**